IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MRK DESIRANT LUXE COLLECTION, LLC d/b/a SUNDAY CITIZEN,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>Defendants. | )<br>)<br>)  Court No. 26-cv-829<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

**I.    INTRODUCTION**

1.   MRK Desirant Luxe Collection, LLC d/b/a Sunday Citizen ("Plaintiff") is a U.S.-based importer of merchandise subject to certain challenged customs duties.

2.   Starting in February 2025, President Trump issued a series of executive orders (the "Challenged Orders") invoking the International Emergency Economic Powers Act ("IEEPA") as the basis for imposing significant new tariffs on goods imported from nearly every foreign country, including those from which Plaintiff sources its products. Plaintiff has been or will be required to pay these tariffs (the "Challenged Tariffs") on its imports.

3.   Operation of the Challenged Orders was enjoined[1] by order of this Court pursuant to its combined opinion issued May 28, 2025 in the cases *V.O.S. Selections, Inc. et al v. U.S.*, 1:25-cv-

---

[1] The CIT's permanent injunction of the Challenged Orders was vacated by the Federal Circuit, which remanded on this issue with instruction to reevaluate the propriety of granting injunctive relief and the scope thereof. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025), *cert. granted,* 222 L.Ed.2d 1231, 2025 WL 2601020 (Sept. 9, 2025). The Challenged Tariffs remain in effect pending Supreme Court review.

00066-3JP, Dkt. No. 55 and *Oregon, et al. v. Trump, et al*, 1:25-cv-00077, Dkt. No. 65 (the "CIT Opinion"). *V.O.S. Selections, Inc. v. Donald J Trump,* 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd,* 149 F.4th 1312 (Fed. Cir. 2025).

4. In the CIT Opinion, this Court determined that the Challenged Orders exceeded the President's authority under IEEPA. *See id.* at 1383.

5. The CIT Opinion was affirmed in relevant part by the Federal Circuit. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1340, 2025 WL 2490634 (Fed. Cir. 2025), *cert. granted,* 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

6. The CIT Opinion expressed concern that even if Congress had authorized the President to impose tariffs under IEEPA, such a delegation of congressional authority would itself be unconstitutional. *Id.* at 1335–36.

7. The Supreme Court heard oral argument in *V.O.S. Selections* and a related case from the U.S. District Court for the District of Columbia[2] on November 5, 2025, and is expected to issue a decision soon. However, even if the Supreme Court invalidates the Challenged Orders and Duties, importers who have paid these duties—including Plaintiff—are not guaranteed refunds without obtaining their own judgment and judicial relief.

8. Defendants continue to apply the Challenged Duties to Plaintiff's imports. Immediate action is required because the entries for which Plaintiff paid IEEPA were scheduled to begin liquidating as early as December 15, 2025. Plaintiff seeks to prevent any further liquidations to preserve its right to a full refund and intends to file a motion for a preliminary injunction to suspend liquidation.

---

[2] *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sep. 9, 2025).

9.  Plaintiff seeks confirmation of what this Court and the Federal Circuit have already held in *V.O.S. Selections*: that the Challenged Orders and derivative duties therefrom are unlawful.

10. Accordingly, Plaintiff requests: (i) a declaration that the Challenged Tariffs are unlawful; (ii) a preliminary and permanent injunction prohibiting Defendants from imposing additional duties under the Challenged Orders; and (iii) a full refund of all IEEPA duties Plaintiff has paid to the United States as a result of those orders, as well as any future payments.

11. The relief sought in this Complaint pertains to all of Plaintiff's current and future imports subject to the Challenged Tariffs which have not yet liquidated. Plaintiff also seeks immediate injunctive relief to suspend further liquidation of Plaintiff's entries subject to the Challenged Tariffs.

## II.   PARTIES

12. Plaintiff is a U.S. Company, registered in Florida that has been assessed and paid duties under the Challenged Tariffs.

13. Defendant United States Customs and Border Protection ("CBP") is an agency within the U.S. Department of Homeland Security, headquartered in Washington, D.C. CBP is charged with administering the collection of tariffs, duties, and taxes on imported goods.

14. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

15. The United States received the Challenged Tariffs and is a statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581. Section 1581 also waives the United States' sovereign immunity. *See Humane Soc. of U.S. v. Clinton*, 236 F.3d 1320, 1328 (Fed. Cir. 2001).

### III.     JURISDICTION

16.     The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sep. 9, 2025).

17.     This Court exercises the same legal and equitable authority as a United States District Court. *See* 28 U.S.C. § 1585. In actions brought under 28 U.S.C. § 1581, the Court is empowered to enter monetary judgments against the United States and to grant all appropriate forms of relief, including declaratory and injunctive remedies. *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

18.     Plaintiff has standing to pursue this action because it is the importer of record for merchandise assessed with unlawful IEEPA duties by CBP. As a direct consequence of the Challenged Orders, Plaintiff paid those duties to the United States and sustained concrete injury. Declaratory and injunctive relief from this Court would remedy these harms. Plaintiff further faces imminent and irreparable injury because entries for which it paid IEEPA became eligible for liquidation as early as December 15, 2025.

### IV.     FACTUAL AND LEGAL BACKGROUND

19.     Although the President has issued additional executive orders imposing additional tariffs and modifying others since the *V.O.S. Selections* complaint was filed, this Complaint challenges only those orders the Federal Circuit has already held to be unlawful. The history of those orders is outlined below.

20.     Implementation of the Challenged Orders was effected by changes to the Harmonized Tariff Schedule of the United States ("HTSUS").

**The Trafficking Tariffs**

21. On February 1, 2025, the President issued three country-specific executive orders under the International Emergency Economic Powers Act ("IEEPA") and the National Emergencies Act ("NEA") imposing additional duties on imports from Canada (EO 14193, or the "Canada Tariff Order"),[3] Mexico (EO 14194, or the "Mexico Tariff Order"),[4] and the People's Republic of China ("PRC") (EO 14195, or the "China Tariff Order").[5] In each order, the President declared an unusual and extraordinary threat tied to drug trafficking and associated public-health and security harms, and invoked the IEEPA as the asserted authority to impose duties to address those emergencies. For clarity, this complaint refers to these three country-specific IEEPA tariff actions collectively as the "Trafficking Tariff Orders" or "Trafficking Tariffs."

22. The Canada Tariff Order (EO 14193) imposed additional duties—including 25% for most products—with adjustments (*e.g.*, 10% for certain energy products) and pauses to effective dates noted in later presidential actions.

23. The Mexico Tariff Order (EO 14194) imposed an additional 25% ad valorem duty on imports of Mexican products. Subsequent amendments adjusted timing and certain conditions (including treatment of de minimis entries) but left the 25% baseline intact.

24. The China Tariff Order (EO 14195) initially set an additional 10% ad valorem duty on products of China based on findings regarding the synthetic-opioid supply chain. On February 5, 2025, EO 14200[6] addressed de minimis treatment for covered PRC articles. On March

---

[3] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border,* 90 Fed. Reg. 9,113 (Feb. 7, 2025).
[4] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border,* 90 Fed. Reg. 9,117 (Feb. 7, 2025).
[5] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 7, 2025).
[6] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025).

3, 2025, the President issued EO 14228[7] raising the duty to 20%, citing China's failure to alleviate the crisis.

**The Reciprocal Tariffs**

25. Subsequently, and separately from the Trafficking Tariffs, the President announced a global "Reciprocal Tariff" regime on April 2, 2025 via EO 14257,[8] declaring a national emergency premised on large and persistent annual U.S. goods trade deficits and lack of reciprocity in tariff rates. EO 14257's findings concluded that disparate tariff rates/non-tariff barriers, and certain foreign economic policies suppressing wages and consumption collectively pose an unusual and extraordinary threat to U.S. national and economic security—thus warranting action under IEEPA/NEA.

26. This action set a baseline 10% duty on nearly all imports, plus higher country-specific rates (ranging from 11%-50%) listed in Annex I to EO 14257, with multiple adjustments in subsequent executive orders. This complaint refers to EO 14257 and its amendments collectively as the "Reciprocal Tariffs." The Reciprocal Tariffs also relied on the purported authority of IEEPA, and declared a national emergency tied to structural trade imbalances. The Reciprocal Tariffs were implemented in addition to other applicable duties and subject to periodic exceptions and product-list updates.

27. On April 8, 2025, the White House issued EO 14259[9] to raise the applicable PRC rate established in EO 14257 by 50%, in response to announced PRC retaliation; on April 9, 2025, EO

---

[7] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).
[8] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits,* 90 Fed. Reg. 15,041 (Apr. 7, 2025).
[9] Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China, 90 Fed. Reg. 15509 (Apr. 14, 2025).

14266 further modified reciprocal rates to reflect ongoing retaliation and alignment, with later adjustments and extensions in July and September 2025.

28. Certain Reciprocal Tariff modifications temporarily paused or reduced rates for trading partners deemed to be taking steps toward alignment or reciprocal agreements, while maintaining or increasing rates for others (including the PRC) pending negotiations; these changes were explained in subsequent Executive Orders and White House fact sheets.[10]

29. To implement the Reciprocal Tariffs, CBP published notices modifying HTSUS, and issued Cargo Systems Messaging Service (CSMS) bulletins detailing reporting exceptions and secondary classifications for Reciprocal Tariff exclusions.

30. As discussed above, on April 14, 2025, several companies filed suit in the U.S. Court of International Trade challenging the legality of both the Reciprocal and Trafficking Orders. *See V.O.S. Selections, Inc. v. Trump*, No. 25-cv-00066. The CIT granted summary judgment on May 28, 2025, and the Federal Circuit affirmed in part on August 29, 2025 (*en banc*), concluding that IEEPA does not authorize tariffs of the type and scope at issue. The Supreme Court later granted certiorari and heard argument on November 5, 2025, consolidated with *Learning Resources*.

**Liquidation and the Role of CBP**

31. CBP is responsible for the implementation of the Challenged Orders, a process it conducts by assessing the relevant tariff rates under the HTSUS and culminating in a process known as "liquidation." "Liquidation" is the final computation or ascertainment of duties on entries for consumption. 19 C.F.R. § 159.1.

---

[10] *See*, *e.g.* Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025); Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025) (EO 14266 further modified the Reciprocal Tariffs against the PRC, which combined with the Trafficking Tariffs, resulted at one point in a duty rate of 145% of IEEPA related tariffs).

32. Once CBP "liquidates" an entry it notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

33. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). However, CBP may extend the deadline for liquidation for a further year. 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(l)(ii). Liquidation typically occurs 314 days from entry.

34. The China Tariff Orders became effective on February 4, 2025, meaning many entries subject to those orders will begin to liquidate on or around December 15, 2025.

35. The Canadian and Mexican Tariff Orders became effective on March 4, 2025, meaning many entries subject to those orders will begin to liquidate on or around January 12, 2026.

36. The Reciprocal Tariff Orders for many countries became effective on April 5, 2025, meaning many entries subject to those orders will begin to liquidate on or around February 13, 2026.

37. This Court may in its equitable authority suspend liquidation. *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

38. Once an entry has liquidated, the importer of record generally has 180 days to file a protest if the liquidation is protestable. This protest asks CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.

39. However, when CBP acts in a purely ministerial role—meaning it applies duties without exercising discretion—the liquidation cannot be challenged. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

40. Both this Court and the Federal Circuit have emphasized that importers may lack any legal entitlement to recover duty refunds on entries that have already liquidated, even if the tariff later proves unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365–66; *Target Corp. v. United*

*States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025). For that reason, this complaint also seeks preliminary and permanent injunctive relief against the liquidation of certain of Plaintiff's entries.

**Plaintiff paid tariffs under the Challenged Duties**

41.  Plaintiff has paid the United States duties imposed by the Challenged Tariffs issued pursuant to the Challenged Orders.

42.  Plaintiff's merchandise subject to the Challenged Tariffs entered the United States under newly designated HTSUS provisions from various foreign countries.

43.  Plaintiff has consistently paid the Challenged Tariffs under those new headings.

44.  As a general matter, the entries for which Plaintiff paid the Challenged Tariffs became eligible to liquidate on or after December 15, 2025.

**IEEPA does not authorize the Challenged Orders or Challenged Tariffs**

45.  As discussed above, this Court and the Federal Circuit have already held that IEEPA does not authorize the Challenged Orders. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025).

46.  In *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), the D.C. District Court likewise held IEEPA does not authorize tariffs.

47.  Those powers that IEEPA does confer, including to investigate and "regulate" importations, do not extend to the authority to impose tariffs. *See* 50 U.S.C. § 1701(a). *See also V.O.S. Selections* 149 F.4th at 1330-35. The language of IEEPA does not support such a grant of authority. Given the magnitude of the claimed power, any such grant would need to take the form of a "clear congressional authorization" that is absent from IEEPA. *See id.* at 1334.

48.  IEEPA does not mention tariffs and has never been amended or used to authorize them since its enactment in 1977. *Id.* at 1335. To interpret IEEPA to confer such "unheralded and

transformative" power of "vast economic and political significance" as the President has claimed through the Challenged Orders would violate the major questions doctrine. *Id.* at 1335-36 (citations omitted).

49. Because the President's claimed authority to issue the Challenged Orders cannot be found in IEEPA, the Challenged Orders and Challenged Tariffs are *ultra vires* and unlawful as against Plaintiff.

**The Constitution neither permits the President to issue tariffs, nor Congress to delegate that authority through IEEPA.**

50. In the alternative, even if IEEPA did authorize the Challenged Orders, that authorization would be in violation of the U.S. Constitution.

51. The U.S. Constitution vests the power to "lay and collect Taxes, Duties, Imposts and Excises" in Congress. U.S. Const. art. I, § 8. Likewise, the Constitution vests the power to regulate commerce with foreign nations in Congress. *Id.* at cl. 3.

52. The ability of Congress to delegate the authority vested in it by the Constitution is constrained by the separation of powers principle which manifests in at least two relevant judicial doctrines: the major questions doctrine (addressed above), and the non-delegation doctrine. *See V.O.S. Selections, Inc. v. U.S.*, 772 F.Supp.3d at 1371.

53. Under the non-delegation doctrine, when it is permissible for Congress to delegate its own authority to another branch, it may only do so where it provides an "'intelligible principle' to guide what it has given the agency to do." *Fed. Commc'ns Comm'n v. Consumers' Research*, 606 U.S. 656, 673 (2025). The degree of instruction that Congress must give to make a delegation valid "varies according to the scope of the power congressionally conferred [and is greater] when an agency action will affect the entire national economy than when it addresses a narrow, technical issue." *Id.* (citations omitted).

54. If IEEPA delegated the authority that the Challenged Orders presume: to impose the Challenged Tariffs on virtually every country in the world with unlimited discretion and for an unlimited duration, that would violate the non-delegation doctrine because IEEPA offers no intelligible principle, or any instruction or guidance at all, to constrain or guide that power.

55. Consequently, even if IEEPA were interpreted to authorize the Challenged Orders, the orders would still be unlawful as IEEPA would violate the U.S. Constitution.

## V. CAUSES OF ACTION

### Count I: The Challenged Tariffs are *ultra vires* under *V.O.S. Selections*.

56. Plaintiff reasserts and incorporates by reference the above-stated paragraphs as if fully set forth herein.

57. Pursuant to the CIT Opinion and the Federal Circuit, the Challenged Orders exceed the authority of the President under Sections 1702 and 1701(b) of the IEEPA and are therefore invalid. *See V.O.S. Selections, Inc. v. United States*, 772 F.Supp.3d at 1383; *V.O.S. Selections, Inc. v. Trump*, *aff'd in relevant part by* 149 F.4th at 1340 (Fed. Cir. 2025).

58. The Challenged Tariffs were imposed upon Plaintiff pursuant to invalid orders, and are also therefore also invalid.

59. Consequently, the assessment of tariffs issued against Plaintiff's imports pursuant to the Challenged Orders is likewise unlawful, and Plaintiff seeks declaratory and injunctive relief to protect itself against the unlawful implementation of the same, as well as a refund of prior amounts paid, with interest at the legal rate.

### Count II: In the alternative, the IEEPA is unconstitutional.

60. Plaintiff reasserts and incorporates by reference the above-stated paragraphs as if fully set forth herein.

61. Even if the IEEPA did authorize the Challenged Orders, which reading would be contradictory to the major questions doctrine, that authorization would itself make IEEPA unconstitutional under the non-delegation doctrine as an impermissible delegation of legislative power from Congress to the President without the necessary guidance or constraints.

62. Consequently, Plaintiff seeks a declaration that the tariffs imposed upon Plaintiff pursuant to the Challenged Orders were levied without a lawful grant of authority under the Constitution, and orders enjoining Defendants from collecting further unlawful tariffs, as well as refunding all Challenged Tariffs collected from Plaintiff, with interest at the legal rate.

### Count III: Declaratory relief under 28 U.S.C. § 2201.

63. Plaintiff reasserts and incorporates by reference the above-stated paragraphs as if fully set forth herein.

64. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201.

65. Plaintiff is an importer of record and has suffered an actual injury by paying duties assessed by the Challenged Tariffs.

66. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA to levy and collect the Challenged Tariffs.

67. Any present or future tariffs imposed upon Plaintiff pursuant to the Challenged Orders, which have been held unlawful by the CIT and Federal Circuit, are likewise unlawful and invalid, and Plaintiff is entitled to declaratory relief to that effect, which this court may issue under 28 U.S.C. § 2201 and its own inherent equitable authority.

### PRAYER FOR RELIEF

68. WHEREFORE, Plaintiff prays for judgment in its favor that:

a. Declares that the President lacks the authority under IEEPA to issue the Challenged Orders;

b. Declares that the collection by Defendants of tariffs pursuant to the Challenged Orders is and was *ultra vires* and *void ab initio* with respect to Plaintiff;

c. Declares that with respect to Plaintiff, CBP lacks the authority to implement and collect tariffs in the HTSUS based on the Challenged Orders;

d. Declares that with respect to Plaintiff, CBP lacks the authority to liquidate entries made under HTSUS headings pursuant to the Challenged Orders, and that any prior liquidation of such entries is null and void.

e. Orders Defendants to refund to Plaintiff all funds paid pursuant to the Challenged Orders;

f. Enjoins, as against Plaintiff, Defendants from any further application of duties as set forth in the HTSUS based upon the Challenged Orders or Challenged Tariffs;

g. Enjoins Defendants from the liquidation of any entries to which Challenged Tariffs have been applied;

h. Awards Plaintiff the costs of suit incurred herein and such other and further relief as this Court deems appropriate and just under the circumstances;

i. Grants such further relief as this Court deems appropriate.

Dated: January 23, 2026                **COZEN O'CONNOR**

*/s/ Thomas G. Wallrich*
Thomas G. Wallrich (MN Bar #0213354)
Heather L. Marx (MN Bar #321163)
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
(612) 260-9002
twallrich@cozen.com
hmarx@cozen.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Complaint to be filed using the United States Court of International Trade's Electronic Filing System, and that a copy of the above-referenced document was sent by certified mail, return receipt requested to the Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice, Washington DC 20530.

                                                 */s/ Thomas G. Wallrich*
                                                 Thomas G. Wallrich